**UNITED STATES of America,**
Plaintiff–Appellee,

v.

**Maurice TROTTER, a.k.a. Mo; Mardell Trotter, a.k.a. Juice, a.k.a. Del,**
Defendants–Appellants.

**Nos. 05–3487, 05–3488.**

United States Court of Appeals,
Tenth Circuit.

April 17, 2007.

Jeffrey M. Brandt, Robinson & Brandt, P.S.C., Cincinnati, OH, for Defendant–Appellant Maurice Trotter.

Matthew M. Robinson, Robinson & Brandt, P.S.C., Cincinnati, OH, for Defendant–Appellant Mardell Trotter.

Terra D. Morehead, Assistant United States Attorney (Eric F. Melgren, United States Attorney, with her on the brief), Kansas City, KS, for Plaintiff–Appellee.

Before MURPHY, McKAY, and GORSUCH, Circuit Judges.

McKAY, Circuit Judge.

Co-defendants and brothers Mardell Trotter ("Mardell") and Maurice Trotter ("Maurice") were tried together and convicted of distribution and possession with intent to distribute significant quantities of cocaine powder and crack cocaine as well as conspiracy to possess with intent to distribute those substances. Mardell was also convicted of two related firearms counts and of conspiracy to possess and possession with intent to distribute marijuana. Both received lengthy sentences. Because they raise many of the same issues on appeal, we have consolidated their appeals for the purpose of this disposition.

## BACKGROUND

According to the evidence presented at trial, Mardell and Maurice conspired with, among others, an individual named Royce King to possess and distribute illegal drugs. Mr. King cooked crack cocaine with Appellants, accompanied them on drug runs, and delivered drugs for them, frequently using Mardell's vehicle for this purpose. A confidential informant, Vonna Landis, made three controlled buys from Mr. King in April and June of 2004; on a fourth occasion, Mardell answered Mr. King's phone and told her to wait fifteen minutes, Maurice then called her back, made further arrangements, and completed the buy with her.

In October 2003, Mr. King, acting under Mardell's direction and using funds provided by Mardell, rented a storage unit in his own name. Mr. King then continued to pay the monthly rent with funds supplied by Mardell. Mardell kept two of the three keys to the unit, giving the other key to Maurice, but on numerous occasions Mr. King was temporarily given a key so that he could retrieve drugs and drug paraphernalia from the unit. At some point, Mr. King surreptitiously copied or stole one of the keys.

Unbeknownst to Appellants, Mr. King began cooperating with police in July 2004. As part of his cooperation, he conducted three controlled buys from Maurice and two separate controlled buys from Mardell. He also gave Officer Sean Brown his key to the storage unit, along with unrestricted permission to enter the unit at any time. Police subsequently conducted some fifteen warrantless searches of the storage unit, uncovering a 9–mm Beretta handgun, ammunition, cocaine, marijuana, Mason jars, and other items. Video surveillance of the unit recorded Mardell, Mr. King, and other individuals visiting the unit on several occasions. Police testimony concerning the unit's inventory demonstrated that drugs were placed in or removed from the unit during at least some of these visits.

On August 6, 2004, police executed search warrants for vehicles and resi-

dences associated with Maurice and Mardell as well as for the storage unit. At Mardell's residence, police uncovered marijuana, Mason jars, and currency that had been used in the controlled drug buys. At Maurice's residence, police found crack and powder cocaine, scales, a spoon with white residue, Maurice's photo identification, Mason jars, and currency exchanged during the controlled buys. Marijuana and drug-related paraphernalia were recovered from another residence associated with the brothers. Police also found a brick of marijuana in Mardell's vehicle.

## DISCUSSION

On appeal, Appellants argue that (1) the district court erred by failing to suppress evidence obtained from the warrantless searches of the storage unit and from the subsequent searches conducted pursuant to warrants; (2) there was insufficient evidence to support (a) their conspiracy convictions, (b) certain of Maurice's drug distribution convictions, and (c) Mardell's 18 U.S.C. § 924(c) firearm conviction; and (3) the district court erred in calculating their sentences by (a) applying a leadership enhancement to Mardell's sentence, (b) calculating Maurice's sentence using prior convictions neither admitted nor proved to the jury beyond a reasonable doubt, and (c) failing to impose a lower sentence based on the disparity in punishment between offenses involving cocaine powder and those involving crack cocaine.

## I. Motion to Suppress

Before trial, Appellants moved to suppress evidence obtained from the warrantless searches of the storage unit as well as evidence obtained pursuant to the search

warrants.[1] Appellants argued that Mr. King lacked both actual and apparent authority to provide the police with permission to enter the unit and, therefore, that the pre-warrant searches were illegal and that the post-warrant searches were "fruit of the poisonous tree." The district court denied the motion, concluding that Mr. King had actual authority to consent to the warrantless searches and, in the alternative, that Mr. King had apparent authority to consent.

In reviewing a district court's denial of a motion to suppress, "we consider the totality of the circumstances and view the evidence in a light most favorable to the government," accepting the district court's factual findings unless clearly erroneous. *United States v. Gama–Bastidas,* 142 F.3d 1233, 1237 (10th Cir.1998). We review de novo the ultimate question of the reasonableness of a search. *United States v. Garner,* 416 F.3d 1208, 1212 (10th Cir. 2005).

The Fourth Amendment does not prohibit the government from conducting warrantless searches when police have obtained voluntary consent either from the individual whose property will be searched or from a third party who has actual or apparent authority to consent to the search. *United States v. Kimoana,* 383 F.3d 1215, 1221 (10th Cir.2004) (citing *Illinois v. Rodriguez,* 497 U.S. 177, 181, 110 S.Ct. 2793, 111 L.Ed.2d 148 (1990) and *United States v. Gutierrez–Hermosillo,* 142 F.3d 1225, 1230 (10th Cir.1998)). The Supreme Court has held that a warrantless search may be justified upon proof that "permission to search was obtained from a third party who possessed common authority over or other sufficient relation-

---

1. The parties dispute whether Maurice actually joined Mardell's motion to suppress, thereby raising a question as to whether Maurice preserved this issue for appeal. In addition, the parties debate Maurice's standing to even contest to searches. Because we affirm the district court's ruling on the merits, we need not resolve these questions.

ship to the premises or effects sought to be inspected." *United States v. Matlock,* 415 U.S. 164, 171, 94 S.Ct. 988, 39 L.Ed.2d 242 (1974).

In *United States v. Kim,* 105 F.3d 1579 (9th Cir.1997), the Ninth Circuit considered the issue of actual authority in a nearly identical factual situation. Defendant Duk Kyung Kim requested an associate, Seon Yong Wee, to rent storage units in his own name, and Mr. Kim occasionally gave Mr. Wee the key to the storage units so that Mr. Wee could supervise the unloading of goods into the units. *Id.* at 1580. Although the court noted that Mr. Kim "had the only key to the lock and had general control over the unit," the court, relying on *Matlock,* 415 U.S. at 171, 94 S.Ct. 988, determined that "[b]y instructing Wee to lease the units in Wee's name, Kim assumed the risk that Wee could exercise his rights as lessee to have the storage company open the unit." *Id.* at 1582. The court also noted that, by giving Mr. Wee the keys to the units when he wanted Mr. Wee to perform certain tasks there, Mr. Kim allowed Mr. Wee control of the units on occasion. *Id.* Based on these facts, the court held that Mr. Wee possessed actual authority to consent to the search. *Id.*

▪ We find this reasoning persuasive. Because the storage unit at issue was leased in Mr. King's name, he could at any time have exercised his rights as lessee to have the storage company open the unit, without Appellants' knowledge or permission. Additionally, Appellants allowed Mr. King access to the storage unit when they sent Mr. King to the unit to retrieve or drop off items. We conclude that Mr. King's position as lessee of the unit and his active participation in renting and using the facility gave him a "sufficient relationship to the premises" to justify the searches based upon his consent.

▪ Although we affirm the district court's ruling based upon Mr. King's actual authority, we believe it is important to clarify that the apparent authority doctrine is not applicable where, as here, police are aware of the actual limits on a third party's authority. A third party has apparent authority where an officer reasonably but erroneously believes, based on the facts available to him at the moment, that the third party has authority over the premises. This gap-filling doctrine does not apply in situations where police have made no mistaken factual determinations regarding the third party's authority. *See United States v. Fultz,* 146 F.3d 1102, 1106 (9th Cir.1998) (refusing to find apparent authority for a warrantless search where "officers were fully aware of the actual facts that establish[ed the third party's] lack of authority to consent to the search"); *see also Petersen v. State,* 939 P.2d 824 (Colo.1997) (noting that *Rodriguez,* 497 U.S. 177, 110 S.Ct. 2793, 111 L.Ed.2d 148, "makes clear that the apparent authority doctrine is based on good faith and reasonable mistakes of fact"). In this case, Officer Brown was fully aware of all of the relevant circumstances and had made no mistaken factual determinations. Thus, the apparent authority doctrine was not applicable to his assessment of Mr. King's authority.

## II. Sufficiency of the Evidence

▪ Appellants next challenge the sufficiency of the evidence supporting several of the counts on which they were convicted. In reviewing for sufficiency of the evidence, we consider whether, "on the basis of the whole record, '[t]he evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—is sufficient if, when taken in the light most favorable to the government, a reasonable jury could find the

defendant guilty beyond a reasonable doubt.'" *United States v. Bowie*, 892 F.2d 1494, 1497 (10th Cir.1990) (alteration in original) (quoting *United States v. Hooks*, 780 F.2d 1526, 1531 (10th Cir.1986)). In making this determination, we do not weigh conflicting evidence nor reevaluate the credibility of witnesses. *United States v. Pappert*, 112 F.3d 1073, 1077 (10th Cir. 1997).

### A. Conspiracy Convictions

Both Appellants argue that there was insufficient evidence to support their conspiracy convictions. To find a defendant guilty of a conspiracy, the jury must find beyond a reasonable doubt that (1) a conspiracy existed, (2) the defendant knew the essential objectives of the conspiracy, and (3) the defendant knowingly and voluntarily became part of the conspiracy. *United States v. Horn*, 946 F.2d 738, 740 (10th Cir.1991). "The essence of a drug distribution conspiracy is an agreement between two or more persons to traffic in controlled substances." *Id.*

At trial, Mr. King provided extensive testimony demonstrating the existence of such an agreement. He testified that he accompanied Mardell on several trips to Kansas City to acquire cocaine and marijuana and that Maurice was present on at least one such trip. He also testified that he cooked cocaine with Mardell and Maurice and that, after a cook, Mardell and Maurice would split the bagged crack so that each brother had a quantity to sell. Mardell offered him crack in exchange for delivering drugs, and he was sent on drug runs that had been arranged by Mardell and Maurice. Eventually, he began making sales arrangements himself, on a cell phone that had been provided by Mardell and with drugs supplied by Mardell and Maurice. The proceeds from those sales were given to Mardell or Maurice. Mr.

King further testified that the brothers stored drugs in the storage unit and that he often went to the unit at their request to pick up or drop off drugs there.

Ms. Landis also provided testimony demonstrating the existence of a drug distribution conspiracy. She testified that she witnessed Mr. King and Mardell carrying out drug transactions at a crack house. According to her, Mr. King would hand drugs to the buyer and would take the money in return, then would promptly hand the money over to Mardell. After she became a police informant, Ms. Landis called Mr. King's cell phone on four different occasions to set up controlled buys. Three times she completed the controlled buys with Mr. King. On a fourth occasion, an individual she identified as Mardell answered the telephone, found out what she wanted, and told her to wait fifteen minutes. Another individual called her back and arranged the buy. She testified that she ended up meeting Maurice and buying crack from him, and that she recognized his voice as that of the caller from the second telephone conversation. Mr. King testified that he had been in custody on the date of this buy and that Maurice had his cell phone while he was in jail. This testimony strongly suggests that the three co-conspirators worked together to distribute drugs rather than selling drugs independently.

This direct testimony was corroborated by other evidence. For instance, Ms. Landis's testimony regarding the controlled buy that she completed with Maurice was corroborated by the eyewitness identification of Maurice by an officer conducting surveillance on the buy. The surveillance video footage and Officer Brown's testimony regarding the quantities of drugs stored in the unit at particular points in time corroborated Mr King's statements about visiting the locker on particular

dates to retrieve drugs. The surveillance video footage and testimony by officers involved in executing the search warrants corroborated Mr. King's testimony regarding the brothers' active participation in using the storage unit. Furthermore, the amount of drugs seized when the warrants were executed was close to the quantity of drugs that had been removed from the storage unit the day before. Viewing the evidence in the light most favorable to the government, we find sufficient support for the jury's conclusion that Appellants conspired to distribute drugs.

## B. Drug Distribution Conviction

 Next, Maurice argues that there was insufficient evidence to support his conviction on the drug distribution counts that were based on controlled purchases made by Mr. King. Maurice asserts that "the essential evidence connecting those purchases to Maurice came from [Mr.] King," an admittedly untrustworthy witness. (Opening Br. of Def.-Appellant Maurice Trotter at 27.) However, other evidence connected Maurice to the controlled buys. Two of the three buys occurred at Maurice's residence, and police surveillance placed Maurice at home during at least one of these transactions. The third buy occurred at the same address where Ms. Landis had purchased drugs from Maurice. Police maintained audio surveillance of all three controlled buys, and the jury listened to both the tape recordings of the phone calls setting up the controlled buys and the recorded transmissions from the wire worn by Mr. King during the actual transactions. Furthermore, currency utilized in these controlled buys was recovered from Maurice's residence. Taken in the light most favorable to the government, we find ample evidence to support Maurice's conviction on these three counts.

## C. § 924(c) Firearm Conviction

 Mardell challenges the sufficiency of the evidence supporting his § 924(c) firearm conviction, which was based on the handgun found in the storage unit. According to evidence introduced at trial, Mardell had obtained this handgun, along with ammunition, from Kreg Steibben, a crack addict with whom he was acquainted. Mr. Steibben testified that he obtained a handgun for Mardell at Mardell's request and that Mardell paid him for the handgun with an eighth of an ounce of crack. Mr. King testified that he loaded and handled the gun for Mardell, then placed it in the storage unit at Mardell's request. Police conducting warrantless searches on the storage unit determined that the firearm was loaded and functional.

 Section 924(c)(1) provides a mandatory minimum five-year term of imprisonment for "any person who, during and in relation to any crime of violence or drug trafficking crime . . ., uses or carries a firearm, or who, in furtherance of any such crime, possesses a firearm." A conviction for possession under this statute cannot be based merely on a showing that a drug dealer possessed a gun; rather, the possession must have "furthered, promoted or advanced his illegal drug activity." *United States v. Iiland,* 254 F.3d 1264, 1274 (10th Cir.2001). Whether a defendant's possession was intended to further his drug trafficking is "necessarily . . . subject to proof by circumstantial evidence," including "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *United States v. Basham,* 268 F.3d 1199, 1208 (10th Cir.2001).

In this case, the loaded firearm was located within feet of stored narcotics in a five-foot-by-five-foot storage locker. Although Mardell told Mr. Steibben that he wanted the gun for personal security, he kept it in the same place where he stored his drugs, rather than at his residence. *Cf. United States v. Garner*, 338 F.3d 78, 81 (1st Cir.2003) ("When guns and drugs are found together and a defendant has been convicted of possession with intent to distribute, the gun, whether kept for protection from robbery of drug-sale proceeds, or to enforce payment for drugs, may reasonably be considered to be possessed 'in furtherance of' an ongoing drug-trafficking crime."); *United States v. Sparrow*, 371 F.3d 851, 854 (3d Cir.2004) (upholding § 924(c) conviction based on firearm found with drug stash in concealed compartment under floor because firearm was "available for [defendant's] protection whenever he retrieved drugs or money from the floor compartment"). Furthermore, based on the surveillance footage of Mardell entering the locker with other individuals and Officer Brown's observations of changes in the amounts of drugs after those occasions, the jury could reasonably have concluded that Mardell engaged in drug transactions inside the locker, near the loaded gun. We find this sufficient evidence to support the 924(c)(1) conviction for possessing a firearm in furtherance of drug trafficking.

## III. Sentencing

██ Finally, Appellants challenge the sentences imposed by the district court. In considering Appellants' arguments, we review the district court's legal interpretation of the Sentencing Guidelines de novo, its factual findings for clear error, and the sentence imposed for reasonableness. *See United States v. Kristl*, 437 F.3d 1050, 1054 (10th Cir.2006).

### A. Mardell's Leadership Enhancement

██ Mardell argues that the district court erred in applying a leadership enhancement to his sentence based on the untrustworthy testimony of Mr. King. Because the district court was applying the Guidelines in an advisory fashion, it was only required to find facts supporting this enhancement by a preponderance of the evidence. *See United States v. Magallanez*, 408 F.3d 672, 685 (10th Cir.), *cert. denied,* —— U.S. ——, 126 S.Ct. 468, 163 L.Ed.2d 356 (2005). However, the district court held that Mr. King's testimony and corroborating evidence proved even beyond a reasonable doubt that Mardell had a leadership role.

Sufficient evidence of Mardell's leadership exists to support the district court's conclusion. Mr. King testified about numerous occasions prior to becoming a confidential informant on which he was directed by Mardell to carry out certain tasks. Some of this testimony was corroborated by other evidence. For instance, Mr. King's testimony that Mardell directed Mr. King to rent a storage locker in his own name was corroborated by other evidence that the storage locker was indeed rented in Mr. King's name, that Mardell used the locker to store his belongings and drugs, and that Mardell had possession of at least one key to the locker. Mr. King's testimony regarding the cell phone provided to him by Mardell was corroborated by Ms. Landis's testimony that, when Mr. King was in custody, Mardell answered Mr. King's phone and had Maurice call her back to arrange a buy. Ms. Landis's testimony that she saw Mardell and Mr. King together at a crack house and that Mr. King, upon completing a sale, promptly gave the money to Mardell corroborated Mr. King's testimony that he gave Mardell or Maurice the money he obtained from selling drugs.

## B. Maurice's Prior Convictions

Maurice argues that the district court erred in calculating his Guideline range based upon prior convictions that were neither admitted nor proved to the jury beyond a reasonable doubt. This argument is foreclosed by the Supreme Court's decision in *Almendarez–Torres v. United States*, 523 U.S. 224, 118 S.Ct. 1219, 140 L.Ed.2d 350 (1998). *See also United States v. Moore*, 401 F.3d 1220, 1224 (10th Cir.2005) ("[W]e are bound by existing precedent to hold that the *Almendarez–Torres* exception to the rule ... extended to the Guidelines in *Booker* remains good law. We therefore conclude that the government need not charge the 'fact' of a prior conviction in an indictment and submit it to a jury." (citation omitted)).

## C. Disparity Between Crack and Powder Cocaine in Sentencing

Finally, Appellants argue that the district court erred by failing to impose a sentence below the Guideline range based on the disparity in punishment between offenses involving cocaine powder and those involving crack cocaine. This argument is foreclosed by our decision in *United States v. McCullough*, 457 F.3d 1150, 1171–72 (10th Cir.2006).

### CONCLUSION

For the foregoing reasons, we **AFFIRM** the judgment of the district court.