**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**July 17, 2008**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

GUILLERMO PEÑA-BAEZ,

    Defendant - Appellant.

No. 07-3217
(D.C. No.06-CR-20175-JWL)
(District of Kansas)

---

### ORDER AND JUDGMENT[*]

---

Before **LUCERO**, **HOLLOWAY**, and **GORSUCH**, Circuit Judges.

---

## I. INTRODUCTION

On December 7, 2006, Guillermo Peña-Baez was charged in a single count indictment, filed that day, with possession with intent to distribute more than fifty grams of methamphetamine and aiding and abetting in that offense in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Mr. Peña-Baez entered a conditional guilty plea to the sole indictment count and reserved the right to appeal the denial of his motion to suppress evidence. A Pre-Sentence Report ("PSR") was prepared

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P.32.1 and 10th Cir. R. 32.1.

and Mr. Peña-Baez received a prison sentence of 168 months, 60 months of supervised release, and a $100.00 special assessment. He now appeals his conviction. We have appellate jurisdiction under 28 U.S.C. § 1291.

## II. BACKGROUND

On October 14, 2006, Officer Greg Richardson of the Olathe, Kansas Police Department received a call from dispatch about an anonymous tip that methamphetamine was present in a bedroom closet of the residence located at 1105 East Loula in Olathe, Kansas. The tip indicated that the drugs belonged to Hugo Chavez, but that he did not live there anymore, and that he might be on his way to the house with more methamphetamine that night.

The Olathe Dispatcher also informed Officer Richardson that on October 8, 2006, the Merriam Police Department stopped a tan Chrysler driven by Mr. Chavez with Mr. Peña-Baez in the passenger seat. Merriam Police officers obtained consent from Mr. Chavez to search the car. While the officers did not find any drugs, the officers did discover an empty hidden compartment, missing light covers, and loose door panels which Officer Lewis believed to show the vehicle was being used to "transport possibly narcotics." R. II at 11. The officers spoke with Mr. Peña-Baez in English while searching the vehicle and he indicated no difficulty understanding them and responding. *Id.* at 8. Officer Lewis admitted he did not do a report of the incident, which would have been normal. *Id.* at 12.

After the Olathe Dispatcher told Officer Richardson about the stop, Officer Richardson contacted the Merriam Police and spoke with Officer Lewis, who conducted the stop of Mr. Chavez and confirmed the information. Officer Richardson then proceeded to 1105 East Loula and looked for the vehicles identified by the Olathe Dispatch. He continued to drive by the residence periodically from 7:30 pm until approximately 11:30 when Officer Richardson saw a light on in the home that had not been on before. Detective Maxfield, who speaks some Spanish, joined Officer Richardson at the residence.

Officer Richardson knocked on the door which was answered by Mr. Peña-Baez. When Mr. Peña-Baez opened the door, Officer Maxfield walked up towards the front door. Officer Maxfield spoke to Mr. Peña-Baez in Spanish initially but began speaking English when Mr. Peña-Baez responded to his questions in English. Officer Richardson asked if the officers could go inside but Mr. Peña-Baez stated that it was not his house and that it belonged to "Niño." Officer Richardson asked what kind of car Niño drove and where he was. Mr. Peña-Baez stated that Niño was at a bar and that he drove a Chrysler.

Next, Officer Richardson asked if there were drugs in the house and Mr. Peña-Baez stated that there were no drugs in the house that belonged to him. Mr. Peña-Baez then stated that Niño would not be home soon but offered to contact him via his cell phone. After dialing Niño's number, Mr. Peña-Baez handed the phone to Officer Maxfield. Officer Maxfield spoke with Niño in English and

Niño stated that he did not live there, had no belongings at the residence, and that Mr. Peña-Baez lived there. Officer Maxfield relayed this information to Mr. Peña-Baez and again asked if they could look inside. Mr. Peña-Baez continued to state that he did not have permission to let them inside the house.

Officer Richardson then asked Mr. Peña-Baez if it would be okay with him for the officers to look inside if Niño gave them permission. Mr. Peña-Baez agreed to that proposal and called Niño again. Niño stated that he was the leaseholder of the residence and provided Officer Maxfield with the landlord's phone number. Niño again asserted that nothing in the residence belonged to him and said that the officers could look through the house. The 1105 East Loula residence was a two story triplex apartment building with a basement, first floor, and a second floor. Mr. Peña-Baez stated that when he stayed there, he stayed on the first floor.

The officers entered the house and looked around, but at no time did Mr. Peña-Baez object to the search or attempt to limit the officers' search of the home. Officer Richardson noticed a gym bag on the first floor behind a staircase. The zipper was not closed all the way, revealing an opening in the bag. Through the opening, Officer Richardson saw several clear plastic bags with white crystals which he believed to be methamphetamine. At that time, the officers arrested Mr. Peña-Baez.

Inside the gym bag, the officers found nine bags of methamphetamine and

-4-

two containers of a cutting agent. In the kitchen, the officers found a money order from Hugo Chavez, a large bag containing two pounds of methamphetamine, three electronic scales, and several items with methamphetamine residue. In the bedroom that Mr. Peña-Baez indicated that he used, the officers found three bags of methamphetamine, a cutting agent, and $24,400 in cash.

On December 7, 2006, a federal grand jury for the District of Kansas returned the one count indictment charging Mr. Peña-Baez with intent to distribute methamphetamine and aiding and abetting in violation of 18 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. Mr. Peña-Baez filed a motion to suppress on March 6, 2007. Defendant's motion argued for suppression of the evidence on two primary bases (1) Mr. Peña-Baez did not provide voluntary consent to the search and (2) Niño had neither actual or apparent authority to consent to the search. A suppression hearing was held on April 4, 2007.

The issue presented on appeal, whether or not Mr. Peña-Baez had either actual or apparent authority to consent to the search, was not argued in the motion to suppress. At the suppression hearing, three witnesses testified, Officer Lewis of Merriam Police Department, Officer Richardson of the Olathe Police Department, and Officer Maxfield of the Olathe Police Department. During the course of the suppression hearing, questioning of the witnesses and arguments made by counsel focused on whether or not Mr. Peña-Baez gave voluntary

consent to search the residence. In fact, during closing statements, Mr. Peña-Baez's counsel stated that "this isn't an issue of whether Mr. Peña-Baez could give consent. He could. He was an overnight guest at the very least, and he could give consent. But the question is, did he?" R. II at 73.

On April 9, 2007, the district court denied the Defendant-Appellant's motion to suppress. The judge made findings stating that "counsel for defendant conceded that Mr. Peña-Baez could give consent to the search. The court agrees....In light of his access to and use of the residence, he had actual authority to consent to the search." April 9, 2007 Memorandum and Order at p. 7. The court also found that "the evidence establishes that Mr. Peña-Baez's consent was unequivocal, specific, and freely given without duress or coercion." *Id.* at 8. Finally, the court specifically found that Mr. Peña-Baez had a working knowledge of English which was sufficient for the consent to be voluntary. *Id.* at 9-10.

On May 8, 2007, Mr. Peña-Baez entered a conditional guilty plea to the one count but reserving for appeal the denial of his motion to suppress the evidence. The district court sentenced Mr. Peña-Baez on July 31, 2007 to a 168 month term of imprisonment, a 60 month term of supervised release, and a $100 special assessment.

### III. DISCUSSION

On appeal, Mr. Peña-Baez challenges the district court's denial of his motion to suppress the evidence recovered during the search of the 1105 East

Loula residence. Mr. Peña-Baez now argues that he did not have the authority to consent to the search, not whether he did in fact provide voluntary consent as was argued below. The government maintains that the argument made on appeal has been waived and was not properly raised below.

*A. Standard of Review*

Under *United States v. Turner*, 483 F.3d 694, 698 (10th Cir. 2003), we consider the "totality of the circumstances and view[] the evidence in a light most favorable to the government, accepting the district court's factual findings unless clearly erroneous." However, we exercise de novo review over the ultimate question of the reasonableness of the search. *Turner*, 483 F.3d at 698.

*B. Issue Raised and Ruled On and Waiver*

The government contends that the argument now made on appeal was not raised below. Also, the government argues that the Defendant-Appellant's counsel conceded the argument made on appeal during the suppression hearing.

First, we examine Mr. Peña-Baez's motion to suppress filed in the district court. The motion focuses on whether Mr. Peña-Baez voluntarily consented to the search of the residence. Indeed, in the Defendant-Appellant's motion to suppress, the primary heading under "Argument and Authority" was "The Government Did Not Obtain Voluntary Consent Before Searching The Apartment." R. I at 11, p. 2. To be sure, the substance of the motion does not address Mr. Peña-Baez's authority to consent to the search. The motion does

however argue that Niño did not have either actual or apparent authority to provide voluntary consent for the officers to search the residence. *Id.* at 3-5. Defense counsel's motion to suppress focuses on the factual inquiry as to whether Mr. Peña-Baez voluntarily consented to the search, but it does not argue that Mr. Peña-Baez lacked the authority to give such consent. We therefore agree with the government that the argument now on appeal was not set forth in the motion to suppress.

At the suppression hearing, counsel focused questions on whether Mr. Peña-Baez voluntarily consented to the search, not whether he had the authority to allow the officers to search the residence. Indeed, during closing argument, Defendant-Appellant's counsel stated that "this isn't an issue of whether Mr. Peña-Baez could give consent. He could. He was an overnight guest at the very least, and he could give consent. But the question is, did he?" R. II at 73. Defense counsel explicitly states that Mr. Peña-Baez had the authority to give consent and provided a basis from which that authority stemmed – that he was an overnight guest. *See United States v. Rith*, 164 F.3d 1323, 1329 (10th Cir. 1999) ("a third party has authority to consent to a search of property if that third party has either (1) mutual use of the property by virtue of joint access, or (2) control for most purposes over it."). The district court noted this concession by Defense counsel in the court's written "Memorandum and Order" of April 9, 2007. R. I at 15, p. 7. The district court ultimately found that Mr. Peña-Baez had the authority to

consent to the search. *Id.* As noted, the district court found that Mr. Peña-Baez had the authority to consent and did in fact voluntarily consent for the officers to search the residence. *Id.*

This case is similar to *United States v. Carrasco-Salazar*, 494 F.3d 1270 (10th Cir. 2007), in one important respect. In *Carrasco-Salazar*, the defendant attempted to pursue an argument made below but abandoned at the conclusion of the sentencing court proceedings. *Carrasco-Salazar*, 494 F.3d at 1272. We found that in *Carrasco-Salazar*, the defendant had not invited the error *per se*, but the defendant had abandoned the argument by expressly indicating to the sentencing court that he had no additional or remaining objections to the proceedings. *Id.* Similarly, in the instant case, Mr. Peña-Baez did not invite the error *per se*, but Mr. Peña-Baez never presented the argument now made, whereas the defendant in *Carrasco-Salazar* did, and defense counsel here expressly foreclosed the argument by telling the court, in no uncertain terms, that Mr. Peña-Baez had the authority to consent.

The Supreme Court in *United States v. Olano*, 507 U.S. 725, 733 (1993) stated that waiver is the "intentional relinquishment or abandonment of a known right." (internal quotations omitted). From the Defendant-Appellant's motion to suppress and the arguments made at the suppression hearing, and the findings noted, it is clear that the only argument pursued was whether Mr. Peña-Baez voluntarily consented. The argument now before us regarding authority to

consent was not made in the motion to suppress or during the proceedings below. Furthermore, Defense counsel's clear statement at the suppression hearing that Mr. Peña-Baez had the authority to consent is an express representation that forecloses the argument from being made on appeal. This concession by counsel constitutes an intentional relinquishment of the opportunity to pursue that argument on appeal. Therefore, we find that the appellate argument offered by the Defendant-Appellant was waived.

## IV. CONCLUSION

We **AFFIRM** the district court's denial of the motion to suppress and we further find that the issue presented in this appeal was waived.

**IT IS SO ORDERED.**

Entered for the Court

William J. Holloway, Jr.
Circuit Judge