**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**December 23, 2015**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

JACQUELINE M. GARCIA, a/k/a
Jacqueline Marie Garcia, a/k/a Jacqueline
Molina,

      Defendant - Appellant.

No. 13-8066
(D.C. No. 2:13-CR-00004-ABJ-1)
(D. Wyo.)

_____

**ORDER**
_____

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.
_____

     This matter is before the court *sua sponte* to make clerical corrections to the Order

and Judgment, originally issued on August 27, 2014. A modified version of the Order and

Judgment is attached to this order. The Clerk is directed to substitute the amended

version *nunc pro tunc* to the original filing date.

                          Entered for the Court
                          ELISABETH A. SHUMAKER, Clerk

                          by: Lindy Lucero Schaible
                            Counsel to the Clerk

FILED
United States Court of Appeals
Tenth Circuit

UNITED STATES COURT OF APPEALS

TENX CIRCUIT

August 27, 2014

Elisabeth A. Shumaker
Clerk of Court

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

JACQUELINE M. GARCIA, a/k/a
Jacqueline Maria Garcia, a/k/a Jacqueline
Molina

Defendant-Appellant.

No. 13-8066
(D. Wyo.)
(D.C. No. 2:13-CR-004-ABJ-1)

ORDER AND JUDGMENT[*]

Before **MATHESON**, **EBEL**, and **McHUGH**, Circuit Judges.

Garcia was found guilty of conspiracy to possess with intent to distribute

and distribution of 500 grams or more of a mixture or substance with a detectable amount

of methamphetamine, 21 U.S.C. §§ 846(a)(1)(A) and 841(a)(1) and (b)(1)(A) (Count 1),

and of possession of a firearm in furtherance of a drug felony,18 U.S.C. § 924(c)(1)(A)

(Count 2). The district court sentenced Garcia to 120 months and then sixty consecutive

---

[*]This order and judgment is not binding precedent, except under the doctrines of
law of the case, res judicata, and collateral estoppel.  It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

months for Counts 1 and 2, respectively. Garcia appealed, contending that there was insufficient evidence to convict on either count. We affirm the jury's verdict.

## I.

The sufficiency of the evidence to support a jury's verdict is a legal issue that is reviewed de novo. United States v. Lewis, 240 F.3d 866, 870 (10th Cir. 2001). On appeal, this court asks "whether taking the evidence—both direct and circumstantial, together with the reasonable inferences to be drawn therefrom—in the light most favorable to the government, a reasonable jury could find the defendant guilty beyond a reasonable doubt." United States v. Jameson, 478 F.3d 1204, 1208 (10th Cir. 2007). "The jury, as fact finder, has discretion to resolve all conflicting testimony, weigh the evidence, and draw inferences from the basic facts to the ultimate facts." United States v. Anderson, 189 F.3d 1201, 1205 (10th Cir. 1999). "Nonetheless, we may not uphold a conviction obtained by piling inference upon inference. . . . The evidence supporting the conviction must be substantial and do more than raise a suspicion of guilt." United States v. Caldwell, 589 F.3d 1323, 1329 (10th Cir. 2009) (alteration in original) (internal quotation marks omitted).

## II. Count One – Conspiracy to Distribute and Distribution

The government presented sufficient evidence from which a reasonable jury could have concluded that Garcia conspired with the intent to distribute and distribution of 500 grams or more of a mixture or substance with a detectable amount of methamphetamine. Garcia's appeal on this issue focuses solely on the insufficiency of the

2

evidence showing that the amount that Garcia distributed or intended to distribute was 500 grams or more. But, Kyle Carothers, one of Garcia's customers, testified that he bought around an ounce of meth per day from Garcia and her husband, Sigifredo Molina, from September 2011 through January 2012 and from March 2012 through May 23, 2012, which, standing alone, is sufficient. Even were Garcia only responsible for one half an ounce per day and only from the period of October through December 2011 (i.e. not counting any of September 2011 and January of 2012), it would yield a total amount sold of 644 grams—sufficient without considering the March-May 2012 period.[1]

Garcia points to the testimony of another witness, contending that Carothers did not deal primarily with Garcia. That witness testified that "[Carothers] would go somewhere else in [their] house with [Molina] and they would make an exchange," and that witness "believed" that Garcia was not present during those exchanges. R. Vol. III at 685. However, a reasonable jury could have: 1) decided that this evidence was not definite enough to preclude Garcia from having been present and involved at the drug distribution such that at least half the meth could be attributed to Garcia; 2) disbelieved that witness; or 3) believed that Molina and Garcia were still conspiring together even if one was often not in the room actually handling the meth. Under any of these scenarios, Carothers' testimony alone was sufficient for a reasonable jury to convict.

---

[1] To add to the already sufficient evidence, another witness and customer of Garcia, Heidi Blankenship, testified that she bought meth a few times a week for resale from Garcia from February 2011 until September 2011 when Blankenship was arrested on assault charges. She testified that she usually purchased a quarter ounce at a time.

### III. Count Two – firearm conviction

The government also presented sufficient evidence for the jury to convict on Count 2. "A conviction under 18 U.S.C. § 924(c)(1)(A) requires more than just possession of a firearm; it also requires that such possession be in furtherance of . . . a drug trafficking crime." United States v. McGehee, 672 F.3d 860, 871 (10th Cir. 2012) (internal quotation marks omitted). "[T]he government must establish some nexus between the firearms and the underlying drug trafficking crime." Id. "The intent to possess the weapon to further a drug trafficking crime is generally proven through circumstantial evidence . . . ." Id. This court has held that "trading drugs for guns furthers, promotes or advances a drug trafficking crime." United States v. Luke-Sanchez, 483 F.3d 703, 706 (10th Cir. 2007) (internal quotation marks omitted). Additionally, this court has noted some of the types of circumstantial evidence it will consider in deciding whether a firearm was used "in furtherance" of a drug crime. McGehee, 672 F.3d at 871 (citing *United States v. Trotter, 483 F.3d 694, 701 (10th Cir. 2007)*). The non-exclusive list of "Trotter factors" includes: "'the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found.'" Id. (quoting *Trotter, 483 F.3d at 701*).

Heidi Blankenship, another of Garcia's customers, testified that she traded a gun to Garcia and Molina in exchange for a reduction of $200 in her drug debts. This fact alone would be enough to satisfy the "in furtherance" standard. See Luke-Sanchez,

483 F.3d at 706.[2] Although we acknowledge our unpublished precedent in a sentencing appeal holding that a gun traded for an accrued debt does not satisfy the "in furtherance" standard, United States v. Evans, 99 F. App'x 220 (10th Cir. 2004) (unpublished decision), Garcia's situation is distinguishable. In Evans, "[t]he government concede[d] that the drug distribution, which occurred on some prior unknown date, was completed by the time [the defendant] received the gun as payment for the drugs," 99 F. App'x at 221. However, in our case, Blankenship and Garcia had a long, close relationship, in which the trading of the gun for a reduction in debt happened so that Blankenship could obtain more drugs in the future, which she then did obtain. Hence, the connection of the gun to drug trafficking was ongoing.

Moreover, applying the *Trotter* factors, and viewing the evidence and all inferences therefrom in favor of the government, a reasonable jury could find Garcia guilty of possessing the firearms in furtherance of a drug trafficking crime. First, the underlying activity in which Garcia engaged was the distribution of meth. Second, the firearms were located in close proximity to the traces of meth police discovered in the bathroom that served as the "business room" in Garcia and Molina's home. Multiple witnesses testified to Garcia's and Molina's dealings from that bathroom. Kyle Carothers testified specifically that he noticed firearms around the bathroom, including the two handguns found by the agents, and that security cameras surrounded the premises. The

---

[2] Blankenship was asked on cross-examination why she had made an earlier statement to agents that she traded the gun to both Garcia and Molina, given that she was testifying at trial that she traded it to Garcia. She attempted to resolve this inconsistency by stating that she considered Garcia and Molina a unit, although she did not back down from her assertion that it was Garcia to whom she had actually given the gun.

5

police also found the guns in the same safe where they discovered a meth pipe. Third, the firearms were handguns and this court's "cases suggest that such handguns are frequently used in similar drug-trafficking crimes, where the offender needs protection because of the high-stakes, dangerous nature of the offense." McGehee, 672 F.3d at 872. Fourth, viewing the evidence in the light most favorable to the government, the gun with one bullet jammed into the chamber is all that would be needed to use the protective function of the gun. Fifth, although the firearms were not registered to Garcia, they were registered to Molina who had been living and conducting business with Garcia for years. A reasonable jury could find that the firearms were used for protection in Molina and Garcia's extensive drug sales.

Garcia contends that Congress and the Supreme Court have made the "in furtherance of" standard a strict one, satisfied only if the government shows that the firearms "further, advance, or help forward a drug trafficking offense." United States v. Rockey, 449 F.3d 1099, 1103 (10th Cir. 2006). Garcia argues that merely having the firearms in the same room is not enough. However, in this case, the evidence—Blankenship's trade of the gun to pay a drug debt and the circumstantial evidence of her possession of the gun in furtherance of an ongoing drug crime—is sufficient given our precedent.

**CONCLUSION**

For the reasons discussed above, we affirm the jury's conviction.

ENTERED FOR THE COURT


David M. Ebel
Circuit Judge