**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**February 22, 2012**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

      Plaintiff-Appellee,

v.

JONATHAN M. McGEHEE,

      Defendant-Appellant.

No. 11-3068

---

**Appeal from the United States District Court**
**for the District of Kansas**
**(D.C. No. 2:09-CR-20014-JWL-1)**

---

Dionne M. Scherff, Erickson Scherff, LLC, Overland Park, Kansas, for
Defendant-Appellant.

Terra D. Morehead, Assistant United States Attorney (Barry R. Grissom, United
States Attorney, with her on the brief), Kansas City, Kansas, for Plaintiff-
Appellee.

---

Before **HARTZ** and **HOLMES**, Circuit Judges, and **EAGAN**, District Judge.[*]

---

**HOLMES**, Circuit Judge.

---

      Defendant-Appellant Jonathan McGehee was found guilty, after a jury trial,

---

[*]       The Honorable Claire V. Eagan, United States District Judge for the
Northern District of Oklahoma, sitting by designation.

of possessing with the intent to distribute a quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1); possessing a firearm in furtherance of a drug-trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2). He now appeals his conviction and sentence, arguing that: (1) the district court erred in denying his motion to suppress on the grounds that his Fourth Amendment rights were violated during a traffic stop where police discovered narcotics and a firearm; (2) the evidence at trial was insufficient as a matter of law to establish that he possessed the firearm in furtherance of a drug-trafficking offense; and (3) the district court erred by denying him a two-level reduction for acceptance of responsibility under § 3E1.1(a) of the U.S. Sentencing Guidelines ("U.S.S.G."). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

On July 12, 2008, Kansas City Patrol Officer Brandon Holloway observed a brown Lexus that appeared to be parked improperly on a residential street. The car was parked "just north of the intersection in front of" a house, R., Vol. 2, at 111 (Test. of Officer Brandon Holloway at Trial, held Oct. 12, 2010), that Officer Holloway knew from prior experience to be linked to drug-trafficking, *see id.* at 162 (noting testimony of Officer Holloway that he had "[r]eceived complaints of narcotics trafficking going on in that establishment" and that he "ha[d] made several arrests from parties coming from that house with narcotics"). The Lexus

-2-

was parked facing the northbound direction of traffic on a street where the "proper parking" would have been facing southbound traffic. *Id.* at 15 (Test. of Officer Brandon Holloway at Mot. Suppress Hr'g, held July 29, 2010). This was a traffic infraction. Officer Holloway circled back around to conduct a traffic stop. However, while he was doing so, the vehicle began turning around, and proceeded to park correctly. At that point, Officer Holloway turned on his emergency equipment, and parked front-bumper to front-bumper with the vehicle.

Officer Holloway got out of his patrol car and approached the vehicle on foot. Mr. McGehee was a passenger in the vehicle. Officer Holloway made contact with the driver—later identified as Calvin Cofield—and asked for his driver's license. As soon as Officer Holloway made contact with the driver, he smelled a strong odor of Phencyclidine ("PCP")—a controlled substance. He "could not distinguish if [the odor] was [coming] from [the driver's] person or the car." *Id.* at 20. Mr. Cofield said that he did not have his driver's license with him, but gave his name. Officer Holloway then approached the passenger's side of the vehicle and asked for Mr. McGehee's driver's license. Mr. McGehee did not have any identification, but, like Mr. Cofield, also provided his name.[1]

Officer Holloway asked central dispatch to conduct warrant checks on both Mr. Cofield and Mr. McGehee. While he awaited the results, Officer Holloway

---

[1]      Mr. McGehee apparently identified himself as "James" McGehee.

noticed inside the vehicle in a compartment around the driver's-side door "a clear, plastic [b]aggie, and inside of it [was] a vanilla extract bottle, which commonly is what PCP is stored in." *Id.* at 22.

Other officers arrived to assist Officer Holloway. The back-up officers removed Mr. Cofield from the vehicle in order to arrest him, and simultaneously, Officer Holloway "observed in plain view [Mr. McGehee] kicking a gray handgun underneath the seat with [the] right heel of his foot." *Id.* at 25. Officer Holloway then had Mr. McGehee step out of the vehicle, and placed him in handcuffs. Mr. McGehee was searched incident to his arrest, and officers discovered "a clear plastic baggie containing individual[ly] wrapped baggies of a white rocky substance [subsequently determined to be cocaine base, i.e., "crack"] as well as $149.00 cash." Aplt. Opening Br. at 3.

Mr. McGehee was charged in a three-count indictment. Specifically, he was charged with possessing with the intent to distribute a quantity of cocaine base in violation of 21 U.S.C. § 841(a)(1) (Count One); using and carrying a firearm during and in relation to a drug-trafficking crime, and possessing a firearm in furtherance of a drug-trafficking crime, in violation of 18 U.S.C. § 924(c)(1)(A) (Count Two); and being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2) (Count Three).

Mr. McGehee filed a motion to suppress evidence obtained as a result of the July 12 stop. He argued that the stop was not justified at its inception and

that the detention was not reasonably related in scope to the circumstances that gave rise to the stop. After a hearing, the district court denied the motion. Mr. McGehee then went to trial on all three counts but made "evidentiary stipulations related to the laboratory testing of the narcotics, [his] prior felony conviction, . . . and the firearm interstate nexus." Aplt. Opening Br. at 4.

At trial, the government introduced several "jail calls" recorded on July 14, 2008, involving Mr. McGehee. Detective Patrick Greeno testified to the content of these calls and noted that, during the calls, Mr. McGehee made references to trafficking in cocaine. *See id.* (noting that the testimony established that, during these calls, Mr. McGehee was "referring to 'work' as business or cocaine for sale" (citing R., Vol. 2, at 228 (Test. of Officer Patrick Greeno at Trial, held Oct. 13, 2010))). At the close of the evidence, the district court denied in part and granted in part Mr. McGehee's motion for judgment of acquittal. Specifically, the court denied the motion in full as to Counts One and Three, but granted it in part as to Count Two. As to that count, the court found sufficient evidence to support the possession-in-furtherance component, but did not permit the government to go forward on the use-or-carry component. The jury returned a verdict of guilty on all three counts.

The Probation Office prepared a Presentence Investigation Report

("PSR").[2] As relevant here, the PSR did not recommend a downward adjustment for acceptance of responsibility under U.S.S.G. § 3E1.1(a). The Probation Office disclosed the PSR to the parties and expressly indicated in an addendum to the PSR that the parties did not object to the PSR's recommendations (including the recommendation concerning denial of the acceptance-of-responsibility reduction). However, before sentencing, Mr. McGehee filed a sentencing memorandum requesting, *inter alia*, a two-level reduction in his offense level for acceptance of responsibility, primarily on the basis that "the overarching tenor of his conduct and his trial strategy was to NOT put the government to its burden in regards to Counts [One] and [Three]." R., Vol. 1, at 127 (Def.'s Sentencing Mem., filed Feb. 25, 2011).

At the sentencing hearing, the district court sought to clarify the parties' positions. It confirmed that neither Mr. McGehee nor the government objected to the PSR's recommendations (which included the recommendation to deny the adjustment for acceptance of responsibility). Apparently based on Mr. McGehee's confirmation that he did not object to the PSR's recommendations, the district court construed Mr. McGehee's argument based upon his alleged acceptance of responsibility as not seeking relief under the Guidelines per se (i.e.,

---

[2]     The Probation Office and the district court used the version of the Guidelines that went into effect November 1, 2010, in computing the advisory sentence. The parties do not question the applicability of this version of the Guidelines and, therefore, we look to it in resolving this appeal.

as not seeking to reverse the PSR's recommendation and to secure a downward adjustment under U.S.S.G. § 3E1.1), but rather as seeking a lesser sentence through a different route—*viz.*, a downward variance.  The district court expressly declined to grant him a variance.  The court then sentenced him to a total term of 147 months' imprisonment: eighty-seven months on Counts One and Three, to run concurrently; and sixty months on Count Two, to run consecutive to Counts One and Three.[3]  Mr. McGehee now appeals.

## II.  DISCUSSION

Mr. McGehee raises three issues on appeal.  He challenges the district court's denial of his motion to suppress.  He also argues that there was insufficient evidence for the jury to convict him of possessing a firearm in furtherance of a drug-trafficking crime.  Finally, he contends that the district court erred in rejecting his request for a two-level reduction for acceptance of responsibility under § 3E1.1 of the Guidelines.  We address each argument in turn.

### A.    Motion to Suppress

Mr. McGehee filed a motion to suppress, arguing that the traffic stop that

---

[3]    The court also ran his sentence "consecutive to any undischarged term of imprisonment remaining in . . . sentences previously imposed" in state court, and "concurrent to [a sentence imposed in] U.S. District Court for the Western District of Missouri Docket No. 10CR00006-01-CR-W-ODS."  R., Vol. 1, at 131 (J. in Crim. Case, filed Mar. 2, 2011).

Officer Holloway conducted was improper, and that his detention violated the Fourth Amendment. The district court rejected his arguments, finding that there was a reasonable basis for the initial stop and the subsequent detention, and probable cause for Mr. McGehee's arrest. We agree with the district court.

### 1.     *Standard of Review*

We recently have summarized succinctly the elements of the governing standard of review:

> When we review a district court's denial of a motion to suppress, we review de novo the district court's ultimate determination of reasonableness under the Fourth Amendment, but we accept the district court's factual findings unless they are clearly erroneous and we view the evidence in the light most favorable to the prevailing party.

*United States v. Ruiz*, 664 F.3d 833, 838 (10th Cir. 2012); *see United States v. Kitchell*, 653 F.3d 1206, 1216 (10th Cir. 2011) (noting that "this court must 'view the evidence presented at the suppression hearing in the light most favorable to the Government'" (quoting *United States v. White*, 584 F.3d 935, 941 (10th Cir. 2009))); *United States v. Thompson*, 524 F.3d 1126, 1132 (10th Cir. 2008) (noting that "we review de novo the ultimate determination of reasonableness under the Fourth Amendment"); *United States v. Worthon*, 520 F.3d 1173, 1178 (10th Cir. 2008) (noting that "we review the [district] court's factual findings for clear error"). "We are permitted to consider evidence introduced at the suppression hearing, as well as any evidence properly presented at trial . . . ." *United States v.*

*Harris*, 313 F.3d 1228, 1233 (10th Cir. 2002); *accord United States v. Rios*, 611 F.2d 1335, 1344 n.14 (10th Cir. 1979) ("We are not limited to considering only the evidence introduced at the suppression hearing.  This court may also consider any evidence properly presented at trial, even though that evidence might not have been introduced at the pretrial hearing.").

### 2.  *Reasonableness of the Search and Arrest*

The Fourth Amendment protects the public from "unreasonable searches and seizures," U.S. Const. amend. IV, including unreasonable "investigatory stop[s]" or detentions, *United States v. Simpson*, 609 F.3d 1140, 1146 (10th Cir. 2010).  "Because a routine traffic stop is 'more analogous to an investigative detention than a custodial arrest,' the principles set forth in *Terry v. Ohio*, 392 U.S. 1 (1968), guide this Court's determination as to the reasonableness of a traffic stop."  *Kitchell*, 653 F.3d at 1216 (quoting *United States v. Hunnicutt*, 135 F.3d 1345, 1348 (10th Cir. 1998)); *see also United States v. Callarman*, 273 F.3d 1284, 1286 (10th Cir. 2001) ("A traffic stop, however brief, constitutes a seizure within the meaning of the Fourth Amendment . . . .").  Under the Fourth Amendment, the determination of whether an investigatory detention is constitutional entails a two-step analysis: the detention "is reasonable if it is (1) 'justified at its inception' and (2) 'reasonably related in scope to the circumstances which justified the interference in the first place.'"  *United States v. DeJear*, 552 F.3d 1196, 1200 (10th Cir. 2009) (quoting *United States v.*

-9-

*Johnson*, 364 F.3d 1185, 1189 (10th Cir. 2004)).

A traffic stop "is [justified at its inception] . . . if the stop is based on an observed traffic violation or if the police officer has reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." *United States v. Botero-Ospina*, 71 F.3d 783, 787 (10th Cir. 1995) (en banc). "[A] traffic stop may be expanded beyond its original purpose if during the initial stop the detaining officer acquires reasonable suspicion of criminal activity, that is to say the officer must acquire a particularized and objective basis for suspecting the particular person stopped of criminal activity," *Kitchell*, 653 F.3d at 1217–18 (quoting *White*, 584 F.3d at 949) (internal quotation marks omitted), or, on the other hand, "if the initial detention has become a consensual encounter," *Hunnicutt*, 135 F.3d at 1349.

In determining whether reasonable suspicion exists, we must look to the "totality of the circumstances," rather than assessing each factor or piece of evidence in isolation, *United States v. Salazar*, 609 F.3d 1059, 1068 (10th Cir. 2010); "[n]o one factor is determinative," *United States v. Holt*, 264 F.3d 1215, 1220 (10th Cir. 2001) (en banc), *abrogated on other grounds as stated in United States v. Stewart*, 473 F.3d 1265, 1268–69 (10th Cir. 2007). When making our assessment, "deference is to be accorded a law enforcement officer's ability to distinguish between innocent and suspicious actions," *United States v. Wood*, 106 F.3d 942, 946 (10th Cir. 1997), and we "need not rule out the possibility of

innocent conduct," *United States v. Albert*, 579 F.3d 1188, 1197 (10th Cir. 2009) (quoting *United States v. Arvizu*, 534 U.S. 266, 277 (2002)) (internal quotation marks omitted). "[W]e consider the reasonableness of an officer's actions using an 'objective standard.'" *United States v. Winder*, 557 F.3d 1129, 1134 (10th Cir. 2009) (quoting *United States v. Sanchez*, 519 F.3d 1208, 1213 (10th Cir. 2008)). Under this objective standard, we ask "whether 'the facts available' to the detaining officer, at the time, warranted an officer of 'reasonable caution' in believing 'the action taken was appropriate.'" *Id.* (quoting *Terry*, 392 U.S. at 21–22).

Because an investigatory detention must be justified at its inception, *DeJear*, 552 F.3d at 1200, we must first pinpoint the moment when Mr. McGehee was seized. The parties agree that the traffic stop constituted the initial "seizure," and commenced at the point when Officer Holloway turned on his emergency equipment and walked up to the vehicle to interact with the driver. We are content to proceed in our analysis on the basis of the parties' agreement on this matter. Although Mr. McGehee does not dispute that at one point the vehicle was parked illegally, he nevertheless contends that "there was no legal basis to conduct a traffic stop on conduct which had already been corrected." Aplt. Opening Br. at 13. Because the Lexus was no longer parked illegally by the time Officer Holloway arrived at the driver's-side window, Mr. McGehee reasons that there was no further basis for the stop. This argument lacks merit.

-11-

It is well-settled that "[a]n initial traffic stop is valid under the Fourth Amendment . . . if based on an observed traffic violation." *Hunnicutt*, 135 F.3d at 1348. Moreover, it is also permissible where an officer "has a reasonable articulable suspicion that a traffic or equipment violation *has occurred* or is occurring." *Id.* (emphasis added). Mr. McGehee points to no cases lending direct support to his argument that subsequent corrective conduct alters or negates the ability of law enforcement to issue citations for offenses that already have been committed. He relies only upon cases where we have held that police may not detain an individual based upon a suspicion that the person has committed a traffic offense, when actually the purported offense is not a state-law violation—i.e., where the officer has committed a mistake of law. *See, e.g.*, *United States v. Gregory*, 79 F.3d 973, 978 (10th Cir. 1996) (concluding that there was no basis to support a traffic stop where one instance of crossing into an emergency lane was not a violation of Utah law). Here, Officer Holloway made no mistake of law—the Lexus in which Mr. McGehee was sitting *was* illegally parked, and the officer was entitled to conduct a traffic stop in order to issue a citation. Accordingly, the initial stop was valid.

Mr. McGehee also suggests that "[t]he officers expanded the stop beyond its original purpose without the prerequisite suspicion of additional criminal activity." Aplt. Opening Br. at 14. He reasons that, after Officer Holloway obtained his identification information, and discovered that there were no active

-12-

warrants outstanding, he should have issued a traffic citation and "allowed the parties to proceed." *Id.* As noted, however, a longer detention is permissible where, *inter alia*, "the detaining officer acquires reasonable suspicion of [further] criminal activity." *Kitchell*, 653 F.3d at 1217–18 (quoting *White*, 584 F.3d at 949) (internal quotation marks omitted).

To begin, we note that Officer Holloway encountered the vehicle in which Mr. McGehee was an occupant in front of a residence known to be associated with drug-trafficking. Officer Holloway was not obliged to ignore this fact in interacting with the vehicle's occupants regarding the traffic violation and, in combination with other suspicious factors, this fact objectively supported Officer's Holloway's belief that the occupants were engaged in criminal conduct. *See Illinois v. Wardlow*, 528 U.S. 119, 124 (2000) ("An individual's presence in an area of expected criminal activity, standing alone, is not enough to support a reasonable, particularized suspicion that the person is committing a crime. But officers are not required to ignore the relevant characteristics of a location in determining whether the circumstances are sufficiently suspicious to warrant further investigation." (citation omitted)); *accord United States v. Dennison*, 410 F.3d 1203, 1208 (10th Cir. 2005).

As for other suspicious factors, notably, Mr. McGehee pays little attention to the fact that Officer Holloway immediately smelled PCP upon arriving at the driver's-side window of the vehicle. PCP emits "[a] very distinct odor." R., Vol.

-13-

2, at 11.  Based on Officer Holloway's on-the-job experience and training—including having made "roughly ten to [fifteen] actual arrests" in crimes involving PCP, *id.* —he knew immediately upon making contact with the driver that PCP was probably inside the vehicle.  At that point, considering the totality of the circumstances, it is beyond peradventure that Officer Holloway had reasonable, articulable suspicion that further criminal conduct was occurring.  *See United States v. Hill*, 199 F.3d 1143, 1148 (10th Cir. 1999) ("Deputy Justice had[] . . . reasonable suspicion that criminal activity was occurring based upon the PCP smell emanating from [the defendant's] bag."); *see also United States v. Foster*, 376 F.3d 577, 586 (6th Cir. 2004) (noting that "detection of the odor of PCP emanating from [the defendant's] person gave the officers the authority to detain [him] temporarily to determine his identity").

Indeed, Officer Holloway may well have had probable cause to believe that a narcotics offense was being committed.  *See, e.g.*, *United States v. West*, 219 F.3d 1171, 1178 (10th Cir. 2000) ("An officer's detection of the smell of drugs, such as methamphetamine, in a car is entitled to substantial weight in the probable cause analysis and can be an independently sufficient basis for probable cause.") (collecting cases); *United States v. Morin*, 949 F.2d 297, 300 (10th Cir. 1991) (noting that, much more than reasonable suspicion, the smell of marijuana "alone can satisfy the probable cause requirement to search a vehicle or baggage").  However, we need not definitively decide that point.  What is clear is

-14-

that Officer Holloway was justified in expanding the scope of the initial encounter to ascertain whether the vehicle's occupants were engaging in criminal conduct relating to narcotics.

Shortly after smelling the PCP, Officer Holloway noticed in plain view a vanilla-extract bottle lodged in the driver's-side door. R., Vol. 2, at 22. Based on his experience, he recognized this as a container in which PCP is commonly stored. At that juncture, even if it was not present before, there was probable cause to search the vehicle for controlled substances. *See United States v. Sparks*, 291 F.3d 683, 690 (10th Cir. 2002) ("[I]f an officer has lawfully observed an object of incriminating character in plain view in a vehicle, that observation, either alone or in combination with additional facts, has been held sufficient to allow the officer to conduct a probable cause search of the vehicle."); *see also United States v. Oliver*, 363 F.3d 1061, 1068 (10th Cir. 2004) (collecting cases); *cf. United States v. Corral*, 970 F.2d 719, 725–26 (10th Cir. 1992) (concluding that there was probable cause to seize and search a package believed to contain cocaine "although the package was opaque and its contents not readily visible" because the "incriminating character of the package was immediately apparent" to the "veteran police officer"). Moreover, at least when coupled with his plain-view observation shortly thereafter of Mr. McGehee "kicking a . . . handgun underneath the seat with [the] right heel of his foot," R., Vol. 2, at 25, the factual circumstances provided sufficient probable cause for Officer Holloway to arrest

-15-

Mr. McGehee. That is, this information provided Officer Holloway with "facts and circumstances . . . that would lead a reasonable person to believe that an offense ha[d] been or [was] being committed by [Mr. McGehee]." *United States v. Brooks*, 438 F.3d 1231, 1241 (10th Cir. 2006) (quoting *United States v. Dozal*, 173 F.3d 787, 792 (1999)) (internal quotation marks omitted).

In many instances, as here, an officer may reasonably conclude, in light of the totality of the circumstances, that illegal drugs discovered in a vehicle in close proximity to a defendant in the vehicle are jointly or constructively possessed by that defendant and the other vehicle occupants. *See Maryland v. Pringle*, 540 U.S. 366, 372 (2003) (concluding that there was probable cause to arrest a defendant where, notably, there were "[f]ive plastic glassine baggies of cocaine . . . behind the back-seat armrest . . . accessible to all three men" riding in the vehicle and "[u]pon questioning, the three men failed to offer any information with respect to the ownership of the cocaine"); *United States v. McKissick*, 204 F.3d 1282, 1292 (10th Cir. 2000) (concluding that the government established "the necessary nexus" between the driver of the jointly occupied vehicle and the narcotics and, more specifically, noting that "[t]he observance of drugs in plain view is a compelling circumstance from which knowledge may be inferred"); *cf. United States v. Bowen*, 437 F.3d 1009, 1016 (10th Cir. 2006) (noting that defendant's "proximity to the drugs would be *insufficient* evidence [of possession], when *considered in isolation*, . . . [b]ut when considered with the rest

-16-

of the evidence presented, his close proximity to the drugs is probative"
(emphases added)).

Mr. McGehee's furtive efforts to conceal the firearm could meaningfully
contribute to an officer's reasonable conclusion that there was probable cause to
believe that Mr. McGehee was engaged in criminal conduct. *See Sibron v. New
York*, 392 U.S. 40, 66–67 (1968) ("[D]eliberately furtive actions and flight at the
approach of strangers or law officers are strong indicia of mens rea, and when
coupled with specific knowledge on the part of the officer relating the suspect to
the evidence of crime, they are proper factors to be considered in the decision to
make an arrest."); *United States v. McCarty*, 862 F.2d 143, 147 (7th Cir. 1988)
(concluding that there was "probable cause to believe that [defendant] was a
convicted felon who possessed a firearm" and observing that "his furtive gesture
when he was stopped, reinforced the reasonableness of the officers' belief that
[he] had committed or was committing a crime"); *United States v. Sanders*, 631
F.2d 1309, 1312 (8th Cir. 1980) (holding that there was probable cause to arrest
defendant and that defendant's "furtive movement" and "his contemporaneous
facial expression" provided support for that result); *see also* 2 Wayne R. LaFave,
*Search and Seizure* § 3.6(d), at 351 (2004) ("Observation of what reasonably
appear to be furtive gestures is a factor which may properly be taken into account
in determining whether probable cause exists.").

More specifically, on these facts, Mr. McGehee's furtive conduct involving

firearms would have meaningfully contributed to probable cause to believe that Mr. McGehee was committing a narcotics-related offense. Officer Holloway already had a legally sound basis for believing that there were narcotics in the vehicle. And, we have long recognized the close association between firearms and drug-trafficking. *See, e.g.*, *Winder*, 557 F.3d at 1138 (suggesting that firearms "are commonly regarded as tools of the drug trade" (citing *United States v. Burkley*, 513 F.3d 1183, 1189 (10th Cir. 2008))); *see also United States v. Vanover*, 630 F.3d 1108, 1118 (8th Cir. 2011) (noting that "drug dealers commonly use firearms for intimidation and protection").

Finally, the evidence found on Mr. McGehee's person was obtained properly pursuant to a search incident to a lawful arrest. *See Arizona v. Gant*, 556 U.S. 332, 338–39 (2009). In sum, at no point from the initial stop through the time of Mr. McGehee's arrest was the Fourth Amendment violated. For that reason, the district court properly denied Mr. McGehee's motion to suppress.

## B.  Sufficiency of the Evidence

Mr. McGehee also contends that there was insufficient evidence for the jury to convict him of possessing a firearm in furtherance of a drug-trafficking crime—that is, of the crime charged in Count Two of the indictment. "In reviewing the sufficiency of the evidence and denial of a motion for judgment of acquittal, this court reviews the record *de novo* to determine whether, viewing the evidence in the light most favorable to the government, any rational trier of fact

-18-

could have found the defendant guilty of the crime beyond a reasonable doubt." *United States v. Irvin*, 656 F.3d 1151, 1162 (10th Cir. 2011). In conducting this inquiry, the court may "not 'weigh conflicting evidence.'" *Id.* (quoting *United States v. Evans*, 318 F.3d 1011, 1018 (10th Cir. 2003)). Moreover, in making its determination, the "court considers the entire record, including both direct and circumstantial evidence, together with the reasonable inferences to be drawn from it." *United States v. Mendez*, 514 F.3d 1035, 1041 (10th Cir. 2008).

"A conviction under [18 U.S.C.] § 924(c)(1)(A) requires more than just possession of a firearm; it also requires that such possession be 'in furtherance' of . . . a drug trafficking crime." *United States v. King*, 632 F.3d 646, 655 (10th Cir. 2011). As a preliminary matter, Mr. McGehee does not appear to argue that the evidence was insufficient to establish that he possessed—or constructively possessed—the firearm in question. He argues only that the evidence could not satisfy the "in furtherance" element of § 924(c)(1)(A).

"We have previously held that 'possession in furtherance[] requires the government to show that the weapon furthered, promoted or advanced a drug trafficking crime.'" *United States v. Luke-Sanchez*, 483 F.3d 703, 706 (10th Cir. 2007) (quoting *United States v. Robinson*, 435 F.3d 1244, 1251 (10th Cir. 2006)). In that sense, "the government [must] establish some nexus between the firearms and the underlying drug trafficking crime." *Id.* "The intent to possess the weapon to further [a] drug trafficking crime is generally proven through

-19-

circumstantial evidence," *King*, 632 F.3d at 655 (quoting *United States v. Rogers*, 556 F.3d 1130, 1140 (10th Cir. 2009)) (internal quotation marks omitted), and in that respect, "[w]e have identified a nonexclusive list of factors that are relevant when assessing whether the government has established the requisite nexus between the firearm and the drug-trafficking offense," *id.* These factors include: "the type of drug activity being conducted, the accessibility of the firearm, the type of firearm, the legal status of the firearm, whether the firearm is loaded, the proximity of the firearm to drugs or drug profits, and the time and circumstances under which the firearm is found." *United States v. Trotter*, 483 F.3d 694, 701 (10th Cir. 2007) (quoting *United States v. Basham*, 268 F.3d 1199, 1208 (10th Cir. 2001)) (internal quotation marks omitted), *judgment vacated on other grounds by* 552 U.S. 1090 (2008), *and* 552 U.S. 1091 (2008).

Applying the *Trotter* factors, we easily conclude that the evidence was sufficient to sustain the conviction. First, as for the type of drug activity, Mr. McGehee's underlying conviction in Count One involved distribution of cocaine base (i.e., "crack"). Specifically, when Mr. McGehee was arrested, Officer Holloway found on his person "individually packaged" "crack" cocaine, which was consistent with intended distribution. Aplee. Br. at 16. Moreover, in the "jail calls" introduced at trial, Mr. McGehee referenced his "work"; in the context of his conversations, as Detective Patrick Greeno testified, this suggested that Mr. McGehee was distributing "cocaine for sale . . . [or] business" when he was

caught.  R., Vol. 2, at 232–33.

As for the type of firearm, the gun was a Ruger pistol, that is, a "large caliber semi-automatic which could [be] easily concealed."  Aplee. Br. at 16; *see* R., Vol. 2, at 127 ("It was a Ruger .40 caliber handgun . . . .").  In fact, as noted, the evidence showed that Mr. McGehee almost successfully concealed it while the driver, Mr. Cofield, was being arrested.  Our cases suggest that such handguns are frequently used in similar drug-trafficking crimes, where the offender needs protection because of the high-stakes, dangerous nature of the offense.  *See, e.g.*, *Rogers*, 556 F.3d at 1140 (finding sufficient evidence "to prove [that] firearms were possessed in furtherance" of a conspiracy "to distribute narcotics" where the firearms—"a loaded .40 caliber Glock semi-automatic pistol and a .22 caliber revolver"—were seemingly possessed for protection).  More generally, as we have stated on numerous occasions, "[i]n the context of drug-trafficking crimes, firearms are frequently 'tools of the trade.'"  *King*, 632 F.3d at 655 (quoting *United States v. Hall*, 473 F.3d 1295, 1304 (10th Cir. 2007)).  Detective Greeno offered testimony concerning the nexus between firearms and the drug trade, which the jury could permissibly credit.  *See* R., Vol. 2, at 216 ("We have a lot of people getting injured over this stuff, and it is very common to see people that traffic drugs with firearms.").

The remaining *Trotter* factors, moreover, collectively suggest that there was more than enough evidence to sustain the conviction.  First, the firearm was

fully loaded with a round in the chamber and clearly accessible to Mr. McGehee. A loaded firearm is obviously "better suited" to serve as protection for illegal drugs that a defendant intends to distribute. *King*, 632 F.3d at 656. Second, while the firearm was not "stolen," it was nonetheless illegally possessed: Mr. McGehee was a convicted felon and had no right to possess it. Moreover, the gun was found in close proximity to the narcotics discovered on Mr. McGehee's person. *See* R., Vol. 1, at 131; *cf. King*, 632 F.3d at 656 ("The firearm was located in the trunk *right next to* the marijuana, meaning that it was immediately reachable when the drugs were being accessed."). While "[t]he mere possession of a firearm in proximity to drugs or drug proceeds would not *require* a finding that [the] weapon was possessed in furtherance of drug trafficking, [it] could be considered by the jury along with other evidence in arriving at a decision as to intent." *Basham*, 268 F.3d at 1208 (emphasis added).

On balance, considering the evidence in the light most favorable to the government, "any rational trier of fact could have found the defendant guilty of the crime beyond a reasonable doubt." *Irvin*, 656 F.3d at 1162. Thus, Mr. McGehee's arguments must be rejected.[4]

---

[4] Mr. McGehee also suggests that the jury was confused on the law because it sent written questions to the court asking for clarification on the "in furtherance" element, as detailed in the instructions. Insofar as Mr. McGehee purports to challenge the instructions given at trial, he has not adequately briefed this argument, and we will not formulate it for him. *See, e.g.*, *United States v.*

(continued...)

## C. Acceptance of Responsibility

Mr. McGehee contends that the district court should have granted him a two-level reduction in his offense level for acceptance of responsibility under U.S.S.G § 3E1.1(a). At the outset, we note that Mr. McGehee has waived this argument.

"We typically find waiver [as opposed to forfeiture] in cases where a party has invited the error that it now seeks to challenge, or where a party attempts to reassert an argument that it *previously raised and abandoned below*." *United States v. Zubia-Torres*, 550 F.3d 1202, 1205 (10th Cir. 2008) (emphasis added). "[W]aiver is accomplished by intent, [but] forfeiture comes about through neglect." *Id.* (second alteration in original) (quoting *United States v. Carrasco-Salazar*, 494 F.3d 1270, 1272 (10th Cir. 2007)) (internal quotation marks omitted). Waiver, unlike forfeiture, requires a showing that a *known* right

---

[4](...continued)
*Kunzman*, 54 F.3d 1522, 1534 (10th Cir. 1995) ("It is insufficient merely to state in one's brief that one is appealing an adverse ruling below without advancing reasoned argument as to the grounds for the appeal." (quoting *Am. Airlines v. Christensen*, 967 F.2d 410, 415 n.8 (10th Cir. 1992)) (internal quotation marks omitted)). Perhaps Mr. McGehee is suggesting that evidence of a jury's confusion regarding instructions pertaining to an element of an offense should itself be viewed as an indication that the jury perceived significant (if not critical) deficiencies in the government's proof on that element. *See* Aplt. Opening Br. at 10 (noting that "[t]he jury clearly had an issue with whether the government met its burden in regards to Count [Two]."). But Mr. McGehee provides no authority to support that proposition and it is not readily apparent to us that he could support it. So, we summarily reject this possible argument by Mr. McGehee.

has been intentionally "relinquish[ed] or abandon[ed]." *United States v. Olano*, 507 U.S. 725, 733 (1993) (quoting *Johnson v. Zerbst*, 304 U.S. 458, 464 (1938)) (internal quotation marks omitted).

"[A] party that has *waived* a right is not entitled to appellate relief." *United States v. Teague*, 443 F.3d 1310, 1314 (10th Cir. 2006). "Unlike waived theories, we will entertain forfeited theories on appeal, but we will reverse a district court's judgment on the basis of a forfeited theory only if failing to do so would entrench a plainly erroneous result." *Richison v. Ernest Grp., Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011). In other words, where a defendant has forfeited an issue in the district court, in order to prevail in an appellate challenge regarding that issue, a defendant must make a sufficient showing of error under the plain-error standard. *See, e.g.*, *United States v. Vasquez-Alcarez*, 647 F.3d 973, 976 (10th Cir. 2011) ("If he has forfeited the stale conviction argument, we review the substantive reasonableness of his sentence only for plain error.").[5]

---

[5]     The issue of whether Mr. McGehee failed to preserve for appellate review his acceptance-of-responsibility argument came up for the first time during oral argument. In its brief, the government did not argue that Mr. McGehee failed to preserve this argument. Consequently, a colorable argument could be advanced that we should overlook Mr. McGehee's apparent failure to preserve his acceptance-of-responsibility argument because the government forfeited the right to object to it. *See United States v. Heckenliable*, 446 F.3d 1048, 1049 n.3 (10th Cir. 2006) ("Defendant concedes he did not challenge the validity of his plea before the district court. The Government, however, does not argue Defendant waived his present challenge, and accordingly, has waived the waiver."); *United States v. Reider*, 103 F.3d 99, 103 n.1 (10th Cir. 1996) (holding

(continued...)

-24-

Before sentencing, Mr. McGehee expressly indicated that he had no objections to the PSR.  And the PSR recommended that he not be given an adjustment *under the Guidelines* for acceptance of responsibility.  Subsequently, Mr. McGehee nevertheless argued in his sentencing memorandum—referencing § 3E1.1—that he should receive a two-level reduction in his Guidelines offense level for his conduct during trial:

> [T]he defendant stipulated to evidence relating to Counts [One]

---

[5](...continued)
that "we do not consider the [waiver] issue" where "the government has not contended that these actions [of defendant, bespeaking waiver] preclude defendant from challenging" the relevant district court rulings).  However, importantly, Mr. McGehee has never made such a government-forfeiture argument.  Furthermore, although we do not accord the fact great weight in our analysis, we note that the government *did* contend at oral argument that Mr. McGehee failed to preserve the acceptance-of-responsibility argument—albeit on grounds that he purportedly forfeited it, rather than waived it.  We arguably may accord some small benefit to the government for that step.  *Cf. United States v. Leichtnam*, 948 F.2d 370, 375 (7th Cir. 1991) (holding that where the government "does not argue in its brief, *and* did not contend at oral argument" that the defendant waived certain issues "by not objecting to them at trial" then the government "waived waiver as a defense") (emphasis added)).  The government indicated that it failed to raise the matter of lack of preservation in its brief through inadvertence.

In any event, we are not obliged to apply forfeiture principles to the government's briefing omission; such decisions are discretionary.  *Cf. Singleton v. Wulff*, 428 U.S. 106, 121 (1976) ("The matter of what questions may be taken up and resolved for the first time on appeal is one left primarily to the discretion of the courts of appeals, to be exercised on the facts of individual cases."); *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008) (concluding that "we exercise our discretion to ignore the waiver"); *Daigle v. Shell Oil Co.*, 972 F.2d 1527, 1539 (10th Cir. 1992) (noting that "we may depart from the general waiver rule in our discretion").

-25-

and [Three]. For example, Mr. McGehee stipulated to the laboratory report regarding the cocaine base. The stipulation alleviated the government from calling a forensic chemist to testify at trial in regards to Count [One]. Mr. McGehee also stipulated to his prior felony and the interstate nexus of the firearm elements in Count [Three]. His stipulation again streamlined the trial and alleviated the government from producing a firearms expert. Finally, the defense announced in opening statement and then reiterated in closing argument that the contested issue in the case involved Count [Two]. . . . The stipulations and trial strategy support an acceptance of responsibility as contemplated by U.S.S.G. § 3E.1.1 (a) [sic] . . . .

R., Vol. 1, at 127.

Even though he referenced § 3E1.1 in his sentencing memorandum, however, Mr. McGehee packaged his argument to the district court differently than he does before us. Here, Mr. McGehee's argument is crafted as a claim of procedural error—*viz.*, that the district court erred in declining to give him a downward adjustment for acceptance of responsibility under the Guidelines. *See* Aplt. Opening Br. at 5 (noting that "[t]he district court erred by denying [him] a two level reduction for acceptance of responsibility as allowed by . . . § 3E1.1."). *See generally United States v. Lente*, 647 F.3d 1021, 1030 (10th Cir. 2011) ("In general, a procedural challenge relates to the method by which the sentence is calculated." (quoting *United States v. Wittig*, 528 F.3d 1280, 1284 (10th Cir. 2008)) (internal quotation marks omitted)); *United States v. Tom*, 494 F.3d 1277, 1280 (10th Cir. 2007) ("To impose a procedurally reasonable sentence, a district court must calculate the proper advisory Guidelines range . . . ." (quoting *United*

*States v. Hildreth*, 485 F.3d 1120, 1127 (10th Cir. 2007)) (internal quotation marks omitted)).

At sentencing, however, Mr. McGehee acknowledged that he had no objections to the PSR's recommendations, which included a recommendation to deny the downward adjustment for acceptance of responsibility. In other words, Mr. McGehee did not contend that the advisory Guidelines range was improperly computed. Consequently, the district court was free to adopt it—including its recommended denial of the downward adjustment for acceptance of responsibility. *See* Fed. R. Crim. P. 32(i)(3)(A) (noting that at sentencing the court "may accept any undisputed portion of the presentence report as a finding of fact"); *accord United States v. Robertson*, 568 F.3d 1203, 1214 (10th Cir. 2009). In this regard, Mr. McGehee's counsel agreed with the district court that "[n]o objections were filed by either party" to the PSR's recommendations regarding the application of the Guidelines. R., Vol. 2, at 306 (Tr. of Sentencing Hr'g, held Feb. 28, 2011). Apparently based on Mr. McGehee's confirmation that he did not object to the PSR's recommendations, the district court reasonably interpreted Mr. McGehee's argument based upon his alleged acceptance of responsibility as not seeking relief under the Guidelines per se (that is, as not seeking to reverse the PSR's recommendation and to secure a downward adjustment under U.S.S.G. § 3E1.1), but rather as seeking a lesser sentence through a different vehicle—*viz.*, a downward variance.

In particular, with the focus on a possible downward variance at sentencing, the court naturally viewed Mr. McGehee's acceptance-of-responsibility argument as related to the possible length of his sentence—that is, as presenting a substantive-reasonableness argument. *See generally Lente*, 647 F.3d at 1030 ("A substantive challenge concerns the reasonableness of the sentence's length and focuses on the district court's consideration of the § 3553(a) factors and the sufficiency of the justifications used to support the sentence."); *United States v. Sayad*, 589 F.3d 1110, 1116 (10th Cir. 2009) ("Substantive reasonableness, on the other hand, involves whether the length of the sentence is reasonable given all the circumstances of the case in light of the factors set forth in [§ 3553(a)]." (alteration in original) (quoting *United States v. Conlan*, 500 F.3d 1167, 1169 (10th Cir. 2007)) (internal quotation marks omitted)). Specifically, the court reasonably interpreted Mr. McGehee's acceptance-of-responsibility argument as seeking favorable sentencing credit, in the computation of the length of his sentence under 18 U.S.C. § 3553(a), for his stipulations and conduct at trial. *See* R., Vol. 2, at 306 ("Mr. McGehee filed a sentencing memorandum making [an] argument about various ways in which . . . a variance from the sentencing guidelines should be ordered . . . ."). Mr. McGehee's counsel agreed with the court's understanding of his position and the applicable decisional framework. *See id.* (responding, "Yes, your Honor," when asked, "Am I correct in that understanding of where we are at this point[?]").

In sum, Mr. McGehee was clearly aware that his claimed acceptance of responsibility was a sentencing consideration before the district court; in fact, he made an acceptance-of-responsibility argument to the court, citing U.S.S.G. § 3E1.1. However, Mr. McGehee explicitly declined to press his acceptance-of-responsibility argument in the context of a procedural Guidelines challenge to the PSR's recommendation that a downward adjustment for acceptance of responsibility be denied. Rather, he elected to seek credit for his purported acceptance of responsibility in the context of a substantive argument for a downward variance. Accordingly, we are disinclined to permit Mr. McGehee to resurrect on appeal the procedural acceptance-of-responsibility argument that he expressly declined to pursue before the district court.

In this regard, our decision in *Carrasco-Salazar* is instructive. In *Carrasco-Salazar*, the defendant filed a written objection to the PSR's recommendation of a sixteen-level enhancement under the Guidelines based upon a prior conviction, arguing that the conviction was "not categorically a crime of violence." 494 F.3d at 1271–72. In response to the objection, the Probation Office filed an addendum to the report supporting its reasoning for application of the enhancement. *See id.* at 1271. The defendant failed to respond. *See id.* at 1272. At sentencing, when asked by the district court, defense counsel affirmatively agreed that the objections to the PSR had been resolved. *Id.* Nonetheless, the defendant lodged the same challenge to the enhancement on

-29-

appeal. However, we concluded that the issue had been waived because "[t]here can be no clearer 'intentional relinquishment or abandonment of a known right[]' than when the court brings the defendant's prior objection to his attention, asks whether it has been resolved, and the defendant affirmatively indicates that it has." *Id.* at 1273 (citation omitted) (quoting *Olano*, 507 U.S. at 733).

Like the defendant in *Carrasco-Salazar*, Mr. McGehee's counsel "had deliberately considered the unraised issue" of whether he was entitled to a procedural reduction under the Guidelines for acceptance of responsibility, but "made an intentional decision to forego it." *Zubia-Torres*, 550 F.3d at 1206. Mr. McGehee's sentencing memorandum clearly suggests that counsel understood the procedural application of § 3E1.1, but despite the district court's inquiry as to whether there were any objections to the PSR, counsel affirmatively agreed that there were no such objections. Morever, Mr. McGehee's counsel expressly acceded to the district court's understanding that (as relevant here) the "sentencing memorandum ma[de] argument[s] about various ways in which . . . a variance from the sentencing guidelines should be ordered." R., Vol. 2, at 306. That is, the district court treated the argument—with Mr. McGehee's endorsement—as a substantive argument for a downward variance, not as an objection to the procedural application of § 3E1.1. For these reasons, the Guidelines acceptance-of-responsibility argument is waived and, therefore, should not be entertained here.

Even if we were to conclude that Mr. McGehee only forfeited the acceptance-of-responsibility issue—rather than waived it—he could not prevail unless he could successfully run the gauntlet created by our rigorous plain-error standard of review. *See, e.g.*, *United States v. Fishman*, 645 F.3d 1175, 1188 (10th Cir. 2011) (reviewing an argument for plain error because the defendant did not raise it below). Mr. McGehee cannot prevail under plain-error review. Under this demanding standard, he "must demonstrate: '(1) an error, (2) that is plain, which means clear or obvious under current law, and (3) that affects substantial rights. If he satisfies these criteria, this Court may exercise discretion to correct the error if [4] it seriously affects the fairness, integrity, or public reputation of judicial proceedings.'" *United States v. Cooper*, 654 F.3d 1104, 1117 (10th Cir. 2011) (alteration in original) (quoting *United States v. Goode*, 483 F.3d 676, 681 (10th Cir. 2007)).

Mr. McGehee's argument on appeal is essentially twofold. *See* Aplt. Opening Br. at 8. First, he contends that the district court's denial of his request for a reduction for acceptance of responsibility was clearly erroneous because it was made without an adequate factual foundation and, more specifically, neglected to properly take into account his conduct in conceding many aspects of Counts One and Three. Second, he claims that the district court inappropriately suggested that it ordinarily would have given him *some* credit for his truthfulness in reaching its decision about the acceptance-of-responsibility adjustment, but it

did not do so because Mr. McGehee was allegedly receiving a windfall in light of the fact that his sentence in the instant case would run concurrently with another sentence that he had previously received in the United States District Court for the Western District of Missouri, by order of that sentencing court. *See* R., Vol. 3, at 15 (PSR, dated Dec. 7, 2010, and revised Feb. 2, 2011) (noting that the Missouri federal court ordered "[t]he sentence imposed in th[at] case" to run concurrently with the sentence "yet to be imposed" in the instant case (internal quotation marks omitted)). However, Mr. McGehee cannot prevail under plain-error review on either argument because the district court did not commit error, much less clear or obvious error. In other words, he cannot satisfy the first prong of the plain-error test.

Generally, we review a district court's decision to refuse application of the two-level reduction for acceptance of responsibility under the deferential clearly erroneous standard. *See United States v. Dazey*, 403 F.3d 1147, 1172 (10th Cir. 2005) ("Whether the facts of a particular case warrant a reduction for acceptance of responsibility is a question of fact that we review under the clearly erroneous standard."); *accord United States v. Hamilton*, 413 F.3d 1138, 1145 (10th Cir. 2005); *cf. Anderson v. City of Bessemer City*, 470 U.S. 564, 574 (1985) ("Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous."). Because "[t]he sentencing judge is in a unique position to evaluate a defendant's acceptance of responsibility[,] . . . [his]

determination . . . is entitled to great deference on review." *United States v. Wooten*, 377 F.3d 1134, 1145 (10th Cir. 2004) (quoting U.S.S.G. § 3E1.1 cmt. n.5) (internal quotation marks omitted); *accord United States v. Day*, 223 F.3d 1225, 1231 (10th Cir. 2000); *cf. United States v. McComb*, 519 F.3d 1049, 1053 (10th Cir. 2007) (discussing the deferential abuse-of-discretion standard and stating that "there are perhaps few arenas where the range of rationally permissible choices is as large as it is in sentencing"). Some appropriate considerations in making this determination include: (1) whether the defendant truthfully admitted the conduct underlying his offense; (2) whether he fully terminated his criminal conduct; and (3) the timeliness of his admissions, if any. *See* U.S.S.G. § 3E1.1 cmt. n.1. The acceptance-of-responsibility adjustment "is not intended to apply to a defendant who puts the government to its burden of proof at trial by denying the *essential factual elements* of guilt[] [and] is convicted." *Id.* § 3E1.1 cmt. n.2 (emphasis added).

In support of his argument, Mr. McGehee relies heavily on our decision in *United States v. Gauvin*, 173 F.3d 798, 806 (10th Cir. 1999), where we upheld the district court's decision to *apply* the two-level acceptance-of-responsibility reduction because, despite deciding to go to trial, the defendant had essentially admitted to *all* of the conduct with which he was charged. *Gauvin*, however, is readily distinguishable.

As a threshold matter, in *Gauvin*, we merely accorded the district court the

requisite deference in upholding its decision to *grant* the two-level reduction. *Id.*

We did not indicate that other sentencing courts would be obliged to reach the

same conclusion on similar facts. In other words, giving other sentencing courts

the same degree of deference, we might well uphold their decisions on similar

facts to *deny* the acceptance-of-responsibility adjustment. *See id.*; *see also Day*,

223 F.3d at 1231 (noting that *Gauvin* was a product of our decision to "give

deference to the district court's determination . . . absent any compelling evidence

to the contrary"). Indeed, we emphasized in *Gauvin* that we ourselves "might not

have reached the same decision" as the district court. *Gauvin*, 173 F.3d at 806.

Furthermore, in *Gauvin*, we emphasized that the defendant had "admitted to

*all* the conduct with which he was charged." *Id.* (emphasis added). Relying on

note 2 in the commentary of § 3E1.1, we stated that his argument was essentially

a challenge to the *applicability of the statute* in question to his conduct. *See id.*;

*see also* U.S.S.G. § 3E1.1 cmt. n.2 (noting that a defendant may demonstrate

acceptance of responsibility when he goes to trial "to assert and preserve issues

that *do not relate to factual guilt*" (emphasis added)).

Unlike the defendant in *Gauvin*, Mr. McGehee clearly did not admit to all

of the conduct in the indictment, and he did not seek only to "preserve issues that

do not relate to factual guilt." U.S.S.G. § 3E1.1 cmt. n.2. Indeed, Mr. McGehee

declined in significant measure to relieve the government of its burden of

establishing his factual guilt of the charged offenses. While presumably creating

a somewhat easier path for the government in terms of evidence presentation by his several stipulations, Mr. McGehee made it quite clear that the burden remained on the government to establish his factual guilt as to *every* count. He did not admit that he was factually guilty of Counts One and Three, and merely challenge the government's proof on Count Two. *See* R., Vol. 2, at 93 (Def.'s Opening Statements) ("[Mr. McGehee is] charged with possession with intent to distribute crack cocaine; he's charged with possession of a firearm in furtherance or in relation to drug trafficking; and he's charged with being a felon in possession. He is exercising his constitutional right to have you decide, ladies and gentlemen, whether he is guilty of *those three charges*." (emphasis added)).[6] In fact, far from conceding his factual guilt regarding those two counts (i.e., Counts One and Three), Mr. McGehee's counsel moved for complete acquittal when she made her Rule 29 motion at the close of the government's evidence. *See* R., Vol. 2, at 261 ("Your Honor, with regards to the indictment and the evidence presented, we would make a motion—pursuant to Rule 29 . . . *as to all three counts* . . . ." (emphasis added)). Accordingly, *Gauvin* is readily

---

[6]     Even if Mr. McGehee had fully admitted his guilt as to Counts One and Three at trial, "[w]e have held that '[w]hen a defendant is convicted at trial, a sentencing court's determination that he has accepted responsibility is based primarily on *pre-trial* statements and conduct.'" *United States v. Hutchinson*, 573 F.3d 1011, 1032 (10th Cir. 2009) (second alteration in original) (quoting *United States v. Eaton*, 260 F.3d 1232, 1237 (10th Cir. 2001)). Simply put, "an admission of guilt at trial does not suffice" to mandate an award of the acceptance-of-responsibility reduction. *Id.*

distinguishable.

In sum, on these facts, where Mr. McGehee went to trial, did not stipulate to all of the factual elements of any count of conviction, and indeed held the government to its ultimate burden on each count, according appropriate deference to the district court, we conclude with no difficulty that the court did not err in denying Mr. McGehee an offense-level reduction for acceptance of responsibility. Because we do not discern any district-court error concerning his first argument, it ineluctably follows that, as to that argument, Mr. McGehee cannot satisfy the first prong of the plain-error test.

We reach a similar conclusion regarding Mr. McGehee's second contention of error. The district court did suggest that it was considering the benefit that Mr. McGehee would receive from the fact that his instant sentence would be running concurrently with his previous federal sentence from the Missouri federal court in determining what credit to give Mr. McGehee for his acceptance of responsibility. *See* R., Vol. 2, at 323–24 (noting that, "because of the significant windfall he receives by virtue of the Western District of Missouri case, I am simply not prepared to [give him credit]" for "not vigorously contest[ing] Counts [One] and [Three] at trial"). Mr. McGehee suggests that it was improper for the district court to consider this factor in denying him an acceptance-of-responsibility adjustment because it is not a factor contemplated by U.S.S.G. § 3E1.1. However, even assuming, *arguendo*, that consideration of such a concurrent-

-36-

sentence benefit in applying U.S.S.G. § 3E1.1 would have been improper, we easily conclude that the district court committed no error—much less clear or obvious error—because it did not in fact consider this benefit in applying § 3E1.1.

Put succinctly, Mr. McGehee's argument is predicated on a false premise: that the district court considered his concurrent-sentence benefit in its decision-making when denying the acceptance-of-responsibility adjustment. It is patent from a review of the record that this is not so. Rather, the district court considered this factor in determining whether to grant Mr. McGehee a variance and, relatedly, in calibrating the appropriate sentence under 18 U.S.C. § 3553(a). The following is the court's full statement:

> *I reject the request to vary.* I understand the argument that Mr. McGehee did not vigorously contest Counts [One] and [Three] at trial. On the other hand, he did not plead guilty to those counts. The jury could have theoretically engaged in nullification and come back with a not-guilty verdict—this, I suspect, he would have been willing to accept—and they did not, so that's how it is. Nonetheless, I ordinarily would be inclined when defendants responsibly deal with the trial and attempt to have their difference resolved by a jury to give them some bit of credit for doing it in a more responsible way, but here, because of the significant windfall he receives by virtue of the Western District of Missouri case, I am simply not prepared to do that, and I think the 87-month sentence [as to Counts One and Three] at the high end of the guidelines *is entirely in keeping with the sentencing factors.*

R., Vol. 2, at 323–24 (emphases added). Thus, it is palpable that Mr. McGehee's concurrent-sentence benefit was a consideration of the district court in deciding whether to vary from the Guidelines range and, relatedly, in determining the

appropriate sentence for Mr. McGehee under § 3553(a).  Whether some conceivable argument could be made that consideration of a concurrent-sentence benefit in the § 3553(a) context was error is a matter that need not concern us here because that is *not* the argument that Mr. McGehee has made.  Mr. McGehee's argument relates to the district court's decision-making in denying the acceptance-of-responsibility adjustment.  And, because it is clear that the court did not consider Mr. McGehee's concurrent-sentence benefit in that context, there is no foundation upon which Mr. McGehee may rest a claim of error.  Accordingly, Mr. McGehee's second argument also falters fatally on the first prong of the plain-error test.

For the foregoing reasons, even if we were to conclude that Mr. McGehee only forfeited the acceptance-of-responsibility issue—rather than waived it—he could not prevail before us.  In sum, the district court did not commit error, much less clear or obvious error.

### III.  CONCLUSION

For the foregoing reasons, Mr. McGehee's conviction and sentence are **AFFIRMED**.